UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                              Case No. 3:23-cr-6-BJD-MCR

BYRON KEITH JONES, JR.

_____

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Byron Keith Jones. Jr., by and through undersigned counsel, submits this Sentencing Memorandum in anticipation of the Sentencing Hearing scheduled for Thursday, September 28, 2023, at 10:00 AM, and asks the Court to consider the following in determining an appropriate sentence.

Mr. Jones was arrested for the charge in this case on January 23, 2023. He was subsequently released to the supervision of Pretrial Services and has been supervised for the past eight months. On June 29, 2023, Mr. Jones pled guilty to Count One of the Indictment, pursuant to a plea agreement. On July 12, 2023, this Court accepted the plea, adjudicated Mr. Jones guilty, and set the Sentencing Hearing. Mr.

Jones accepts full responsibility for his actions and is prepared to accept the sentence of this Court.

This conviction subjects him to a statutory maximum penalty of five (5) years in prison. *See* 18 U.S.C. §§ 924(a)(1)(A). The United States Sentencing Guidelines result in a Total Offense Level of 12. *See* USSG §§ 2K2.1, 3E1.1. Given Mr. Jones's prior criminal history, the Guidelines place him in Criminal History Category IV. *See* USSG §§ 4A1.1, 4A1.2. This results in an advisory sentencing range of 21 to 27 months imprisonment. *See* USSG § 5A. Mr. Jones respectfully requests that this court vary from the advisory guideline range and sentence him to Probation, with standard conditions and a continuation of the special conditions of his pretrial release.

## INTRODUCTION TO BYRON JONES

Byron Jones is 35 years old. His parents both served in the U.S. Army and met each other in Germany, where they were both stationed and assigned to duty along the Berlin Wall. They married in 1987 and Mr. Jones was born about one year later when his parents were stationed at Fort Drum in Waterton, New York. When Mr. Jones was 5 years old, his parents divorced.

His father, Byron Jones, Sr. has never been a major part of his life. Mr. Jones, Sr. lives in Texas and has not spoken to his son for almost 20 years. According to Mr. Jones, his father suffers from PTSD and self-medicates through uncontrolled alcoholism. In the absence of his father, Mr. Jones found a male role model in his maternal grandfather, Napoleon Dawson. He was a police officer with the Chattanooga (Tennessee) Police Department for 32 years, retiring with the rank of Captain. Capt. Dawson passed away on March 18, 2015; for Mr. Jones, this was devastating loss.

Mr. Jones' mother is Vanessa Dawson Jones and is the one constant in his life. She is a disabled veteran and served as an MP (military police) during her time in the Army. She raised Mr. Jones mostly on her own, at times working multiple jobs to provide for her and her son. Things were not always easy, and they had some periods of homelessness. As noted in the PSR, Ms. Dawson Jones suffers from several chronic physical and mental health issues. She is prescribed 20 different medications and often requires assistance performing the daily activities that most of us take for granted.

Mr. Jones is the primary caretaker for his mother, and she is in the process of getting him approved to serve as her official caretaker through the Veteran's Administration. He accompanies her to her many doctors' appointments, prepares meals, makes sure she is filling and taking her prescribed medications, helps her walk when she is experiencing vertigo, and sometimes must assist her with basic daily hygiene. Notably, Mr. Jones never complains about the role he has taken on for his mother. He believes that it is the least he can do, considering everything that she has done for him.

Mr. Jones describes himself as generally a "loner," and mostly keeps to himself, outside of work or family. He is friendly and gets along well with everyone he meets at work but does not really "hang out" with many people. He speaks weekly on the phone with his 15-year-old daughter who lives in Houston, Texas, reminding her to do well in school and respect her mother. At times, he will meet up with her when she and her mother visit Florida. Although he is still trying to obtain a long-term employment and discover something that he can make a career out of, he is a hard worker and finds joy in work.

Mr. Jones is an active person and played various sports in high school and church, including swimming, track and field, and basketball. He is also very intelligent. In school, he spent some time on the debate team. He was also a member of the chess club. He enjoyed competing in chess tournaments so much that he has a tattoo of a chess piece with his first initial on his right shoulder. Mr. Jones also developed an interest in computers and technology. As noted in the PSR, after graduating from high school, he pursued education at a few different institutions, but unfortunately never finished. He hopes to gain some certifications within the technology and data fields once this case is behind him.

## **BYRON JONES' HISTORY**

While Mr. Jones is very driven and has many gifts, he often has trouble staying focused and thinking things through before making decisions. There is no avoiding the fact that this has led Mr. Jones to obtaining a criminal history. As outlined in the PSR, Mr. Jones has had 12 cases that resulted in criminal convictions (including withholds of adjudication). However, there are some mitigating facts about these cases for this Court's consideration in sentencing.

Half of the cases (six) involved driving without a valid license or driving with a suspended license as the only crime charge. Moreover, one-fourth (three) of the cases involved possession of small quantities of drugs as the only crimes resulting in convictions. In two of these drugs cases, possession of cannabis was the only crime charge. Of the remaining three cases, two involved carrying a concealed weapon (one in which that was the only crime charge) and one involved misdemeanor resisting a law enforcement officer.

Undersigned counsel does not intend to trivialize Mr. Jones' prior criminal convictions, but it should be noted that none of his prior convictions (or prior arrests not resulting in conviction) involved allegations of violence, battery, or other threatening behavior. Neither does his criminal history demonstrate any behavior related to theft or fraud. While two cases involved concealed carry, the one in Georgia when Mr. Jones was 20 years old was a misdemeanor for carrying a concealed weapon (not a firearm),[1] the Florida case was over eight years ago, and in neither case was Mr. Jones a convicted felon at the time.

---

[1] *See* O.C.G.A. § 16-11-126(i)(1) (2008) (Georgia statute making possession of a non-firearm "weapon" a misdemeanor).

That said, Mr. Jones understands that he absolutely needs to work on obtaining a valid driver's license and, as difficult as it may be in today's world, he must avoid driving until that is taken care of. To this end, the most significant thing he must address is the warrant from Clayton County, Georgia, for a DUI he allegedly committed over 13 years ago (July 2010). The outstanding warrant does not include an out-of-state extradition provision, so he will have to arrange transportation to Georgia to turn himself in or find another way to get the case resolved. Once he resolves that case, and obtains drivers license clearance from Georgia, he will then work on clearing up any Florida-based suspensions.

It is also clear from Mr. Jones' criminal history that he struggles with substance use. Prior to the arrest on January 23, 2023, he had been using cannabis on and off for about 15 years. His use picked up significantly in March 2021, after he obtained a legal and valid Florida Medical Marijuana Use Registry Identification Card ("MMJ Card"). His MMJ Card was renewed in March 2022, and was valid at the time of his arrest in this case. As demonstrated by his prior convictions, Mr. Jones experimented with some other drugs when he was younger, but cannabis was his drug of choice. He obtained his MMJ Card in part because he

found cannabis to be more effective and less addictive than manufactured medications in relieving pain following his auto accident and the surgery that followed.

However, after Mr. Jones' arrest and upon being ordered by the court to abstain from using federally controlled substances, he immediately stopped consuming cannabis and continued to abstain throughout his eight months on pretrial release. After the cannabinoids in his system from use prior to the arrest left his system, all 14 subsequent urinalyses demonstrate that he followed the court's order. According to Mr. Jones, staying away from marijuana was not the easiest thing to do at first, but he nevertheless managed to stay clean.

While on pretrial release, Mr. Jones has been attending counseling session at Chemical Dependency Counseling ("CDC") in Jacksonville, for treatment of severe cannabis use disorder. He participates in weekly group counseling sessions and monthly one-on-one therapy. He has been an active participant at CDC throughout his time there. Admittedly, he was initially resistant to viewing his cannabis use as problematic but has since embraced living without it. He reports having a clearer head and being more motivated in his daily life. He looks

forward to continuing this treatment while on probation or supervised release.

## NATURE AND CIRCUMSTANCES OF THE OFFENSE

Mr. Jones pled guilty in this case because he is guilty. He recognizes the criminal nature of his conduct and understands why the government is prosecuting him. He knew that he was convicted of a felony offence about five ago and nevertheless entered Academy Sports and attempted to purchase a firearm. He knows that he should have made a better decision and, in general, needs to avoid making impulsive decisions. However, there are some mitigating facts about Mr. Jones' crime that arguably place it on the less severe end of the federal gun crime spectrum.

In October of 2022, Mr. Jones received a Jury Summons from the Duval County Clerk of Court.[2] The Summons ordered him to appear on November 28, 2022, at 1:00 PM for jury duty. Receiving this Summons surprised him. As he understood it, his prior felony conviction made him ineligible to serve on a jury, and therefore ineligible to be summoned

---

[2] A copy of the Jury Summons was filed as an Exhibit along with this Memorandum.

9

for jury service. He did not know that clerks of court send out jury summonses without verifying the felon status of the person being summoned. He thought that the Duval County courts should know he is a felon, as his felony convictions are from Duval County. Mr. Jones further concluded that he must no longer be considered by Florida as a felon deprived of his civil rights. It was this questionable logic that led him to believe that he could successfully obtain a firearm.

Obviously, Mr. Jones was wrong and in retrospect he realizes that. He accepted responsibility because he knows that the question being asked of him on Form 4473 was whether he had been convicted of a felony, and not whether the Duval County Clerk of Courts believes that he has. While Mr. Jones' impulsive behavior is not legally excusable, these circumstances show that he was not committing the crime maliciously. Afterall, Mr. Jones entered a well-established legal firearms dealer to attempt his purchase. Unlike almost every other convicted felon charged with gun crimes, he was not trying to acquire a firearm on the black market or attempting to possess a stolen firearm.

## CONCLUSION

While the Sentencing Guidelines, as applied to his case, advise a sentence of imprisonment, the goals of federal sentencing are achievable here without sending Mr. Jones to jail or prison. Mr. Jones obviously has a lot of things to work on to become a law-abiding citizen and achieve his true potential, but incarceration will not assist with that. A sentence of probation will sufficiently punish Mr. Jones and provide him the opportunity to continue working, learning, taking care of his mother, seeking substance abuse treatment, address the outstanding Georgia case, and obtain a valid driver's license. Mr. Jones' behavior over past eight months while on pretrial release demonstrates that he can abide by any conditions of probation that this Court sets.

Respectfully submitted,

A. FITZGERALD HALL, ESQ.
Federal Defender, MDFL

Scott T. Schmidt, Esq.
Assistant Federal Defender
Florida Bar No. 92534
200 West Forsyth Street, Suite 1240
Jacksonville, FL 32202
Telephone: (904) 232-3039
Fax: (904) 232-1937
Email: scott_schmidt@fd.org

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September 2023, a true copy of the foregoing was served by electronic notification to Assistant United States Attorney Frank Talbot, Esq., and to United States Probation Officer Chavi Cheatham.

*/s/ Scott Schmidt*
Scott T. Schmidt, Esq.
Assistant Federal Defender